```
1                UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF FLORIDA
2                       MIAMI DIVISION
                 CASE NO. 19-cv-23778-CMA
3

4    VERBENA PRODUCTS, LLC,           Miami, Florida

5           Plaintiff,                November 26, 2019

6        vs.                          4:13 p.m. to 4:42 p.m.

7    SESDERMA USA, LLC, et al.        Courtroom 12-2

8           Defendants.               (Pages 1 to 21)

9    _____

                            MOTION HEARING
10        BEFORE THE HONORABLE CECILIA M. ALTONAGA,
                 UNITED STATES DISTRICT JUDGE
11

12   APPEARANCES:

13   FOR THE PLAINTIFF:     NICOLE FUNDORA, ESQ.
                            RICHARD GUERRA, ESQ.
14                          The Brickell IP Group
                            1101 Brickell Avenue, Suite 800
15                          Miami, FL 33131
                            (786) 468-9736
16                          (786) 405-2453
                            nfundora@brickellip.com
17                          rguerra@brickellip.com

18   FOR THE DEFENDANTS:    JESUS SANCHELIMA, ESQ.
                            Sanchelima & Associates, P.A.
19                          235 SW 42nd Avenue
                            Miami, FL 33134-1771
20                          (305) 447-1617
                            jesus@sanchelima.com
21

22   REPORTED BY:           STEPHANIE A. McCARN, RPR
                            Official Court Reporter
23                          400 North Miami Avenue
                            Twelfth Floor
24                          Miami, Florida 33128
                            (305) 523-5518
25                          Stephanie_McCarn@flsd.uscourts.gov
```

```
 1                      I N D E X

 2                      WITNESSES

 3
    WITNESSES FOR THE PLAINTIFF:                    Page
 4                                                   --

 5

 6
    WITNESSES FOR THE DEFENDANTS:                   Page
 7                                                   --

 8

 9  EXHIBITS IN EVIDENCE          PRE    MARKED   ADMITTED

10  Plaintiff's Exhibit No.       --      --        --

11  Defendants' Exhibit No.       --      --        --

12

13

14

15

16

17                    MISCELLANEOUS

18                                                  Page
19  Proceedings.......................................   3
    Court Reporter's Certificate.....................  21
20

21

22

23

24

25
```

1          (The following proceedings were held at 4:13 p.m.)

2          THE COURT:  Verbena Products, LLC, and Sesderma USA,

3    LLC, and Sesderma, SL.  Good afternoon.

4          MR. GUERRA:  Good afternoon, Your Honor.

5          MR. SANCHELIMA:  Good afternoon, Your Honor.

6          THE COURT:  Okay.  And I thank you all for coming in a

7    little bit later than originally planned; otherwise, I would

8    have kept you waiting more than I would like to.

9          I would ask Counsel to state your appearances for

10   Plaintiff.

11         MR. GUERRA:  Richard Guerra with the Brickell IP

12   Group, and with me is Nicole Fundora, also with the Brickell IP

13   Group on behalf of the Plaintiffs.

14         THE COURT:  Thank you.

15         For Defendants.

16         MR. SANCHELIMA:  Jesus Sanchelima on behalf of

17   Sesderma, SL, the registrant owner of the trademark and also

18   representing Sesderma US, LLC, the exclusive distributor for

19   Sesderma SL.

20         THE COURT:  All right.  Thank you.

21         So, Mr. Sanchelima, this is your motion to dismiss the

22   amended complaint.  I will hear from you first.

23         MR. SANCHELIMA:  Yes, Your Honor.

24         THE COURT:  You may be seated.

25         MR. SANCHELIMA:  We're not unmindful of the

4

1   restrictions of the procedural posture that we are in with the

2   motion to dismiss.  However, it is our position that with

3   respect to Section 43(a) of the *Lanham Act*, we have

4   insufficient allegations of actionable facts that could provide

5   a *prima facie* of the allegations of the causes of action that

6   the Plaintiff intends to promote here.

7          To go straight to the point, Section 43(a) requires

8   advertising or promotion of a designation that would be

9   allegedly false.  In this case, however, there has been no

10  contact with Walmart, which is the facilitator or the Internet

11  service provider that is used by both parties, by one of the

12  Defendants and the Plaintiff.

13         The actions, as they have been cryptically alleged in

14  the complaint, mention that there was a contact with Walmart

15  through a prescribed trenchant, private and ephemeral

16  communication with their own server whereby the Defendant

17  Sesderma USA, LLC, alleged ownership of certain rights over a

18  particular trademark and a money trend, the marketplace, this

19  is something that they have a duty to do.

20         Now, on section -- on Paragraph 28 of the complaint,

21  the Plaintiff makes reference to the *Digital Millennium Act,*

22  which is a provision that Walmart avails itself for the

23  protection of the safety harbor provided for Internet service

24  providers.  Therefore, it is -- it behooves Walmart to be aware

25  of any potential trademark infringements.  And our client, the

1   only thing that they did was to follow the steps provided in

2   the portal from Walmart to bring this to the attention of

3   Walmart that there is an unrecognized product, that it may or

4   may not comply with the regulations of the United States, and

5   our client has taken very strict steps to comply, not only with

6   U.S. regulations, but also with the Food and Drug

7   Administration regulations that require certain labelling on

8   the products.

9            What we -- what Plaintiff refers to as the secondary

10  channel is basically grey market goods that have been imported

11  that were not intended for the U.S. market.  And we are here

12  trying to bring to the attention of the Internet service

13  provider that they have a situation where we are the owners of

14  the trademark.  And that's all that has been done.

15           THE COURT:  Right.  And that may be your -- in fact,

16  that is your defense as you're previewing it; but the question

17  is, does Plaintiff sufficiently allege that these Defendants

18  violated the *Lanham Act* by disseminating false or misleading

19  statements about Plaintiff's business and its products?  And to

20  state a claim under the *Lanham Act*, the Plaintiff has to allege

21  the advertisements of the Defendants were false or misleading,

22  those advertisements deceived or had the capacity to deceive

23  consumers, the deception had a material effect on purchasing

24  decisions, the misrepresented product affects interstate

25  commerce, and the Plaintiff is -- is or is likely to be injured

```
 1    as a result of the false advertising.  And isn't -- aren't
 2    those allegations, in fact, satisfied by -- or aren't those
 3    elements, in fact, satisfied by the plausible allegations of
 4    the amended complaint, and doesn't the Plaintiff, in fact,
 5    state a claim for relief under the *Lanham Act*?
 6                MR. SANCHELIMA:  We submit, Your Honor --
 7                THE COURT:  Putting aside the truth or falsity of
 8    them, but that's not what we are addressing today.
 9                MR. SANCHELIMA:  We understand that, Your Honor.  We
10    just wanted to give you some background as to how this episode
11    came about.  But with respect to the advertising and promotion,
12    it is a requirement that both -- we agree on the authorities of
13    *Gordon & Breach,* that has been adopted by the *Suntree* case,
14    Eleventh Circuit, that we need commercial speech.  And our
15    position is that that communication with Walmart does not
16    amount to commercial speech, even under the *Central Hudson*
17    Supreme Court decision as to what is considered to be a
18    commercial speech.  It is not within the matters that have been
19    alleged that we have -- that it has complied with solely the
20    economic interest of the speaker and its audience.  No.  The
21    communication involved a communication to Walmart of the
22    exclusive rights that under the trademark that the Defendant
23    has.  That is not commercial speech.
24                It is a private and ephemeral communication, all that
25    took place.  It would send a chilling effect to anyone that
```

1   owns a trademark if by merely notifying a portal of its rights

2   if that is sufficient to trigger a federal lawsuit.  That's our

3   position.  There are a number of different requirements under

4   commercial speech in addition to the fact that it doesn't

5   promote an economic interest of the speaker in the audience.

6   It is also -- it requires that the consumers be influenced.

7   There has been no contact with a purchaser or a potential

8   purchaser.  This was a private communication between the

9   Defendant and the portal, which is not a customer or a

10  potential customer.

11          THE COURT:  Is that what you are saying, or is that

12  what the complaint says?

13          MR. SANCHELIMA:  That's what the complaint says.  They

14  have not been able and they cannot allege that there has been a

15  contact with a purchaser or a potential purchaser.  That's the

16  second hurdle.

17          And the third hurdle is that there has been not

18  sufficient dissemination.  And there are a number of cases that

19  we briefed that provide for -- determinate what the market, the

20  relevant market is.  They have not even attempted to provide

21  any kind of indication as to what the relevant market is.  And

22  if it is a large relevant market that you would infer from the

23  fact that Walmart is involved with thousands or hundreds of

24  thousands of potential customers on the Internet, then one

25  communication, one contact, ephemeral, because neither body had

1    a copy of that particular contact and probably will never see

2    that particular contact because it's a transitory constraint

3    screen that the Defendant activated to record its ownership of

4    the trademark.  And that is all that we have here today, Your

5    Honor.

6            That's not sufficient to qualify the actions as a

7    validation of 43(a), the false advertising prong of 43(a) under

8    the *Lanham Act*.

9            THE COURT:  All right.  And you also, Mr. Sanchelima,

10   you also challenge Plaintiff's standing to seek declaratory

11   relief.  Did you want to address that as well?

12           MR. SANCHELIMA:  Yes, Your Honor.  There has been no

13   threat of an infringement -- of bringing an action for

14   infringement against the Plaintiff whatsoever.  The

15   communication with the portal was exclusively to bring to their

16   attention that our client, the Defendant, has exclusive rights

17   over the United States and the trademark ownership, and that's

18   what the form provides for.  It's constrained.  There are only,

19   like, so many characters and so many options that the Defendant

20   would click on to be able to communicate to the portal that it

21   owns the trademark.  And that's all that has been done in this

22   case.  There has been no dissemination, no display on the

23   Internet.  There have been no reviews, comments.  There have

24   been no publications in a trade show, no pamphlets, nothing,

25   absolutely nothing.

1          THE COURT:  All right.  Thank you very much.

2          I would hear then from Plaintiff's Counsel.

3          Mr. Guerra.

4          MR. GUERRA:  Your Honor, would you prefer if I stayed

5    here or?

6          THE COURT:  Wherever you are more comfortable.

7          MR. GUERRA:  Sure.  And, Your Honor, I was going to go

8    through the factors for 1125(a) for stating a cause of action

9    for the *Lanham Act*, but I think that the Court articulated

10   those factors, and I think based on the papers that we've

11   submitted to the Court, it's clear from the pleadings that

12   we've made those allegations.

13         So I think what this case, this dispute comes down to

14   is really the three points relating to whether or not we have

15   successfully stated a cause -- or met the element of commercial

16   advertising, even though I understand it's not the articulated

17   elements, it's still something that agreeably, as

18   Mr. Sanchelima said, is required.

19         And we get to the three points that he raised, the

20   first one being commercial speech.  My issue with the

21   commercial speech is the Defendants' argument is -- is tagging

22   onto this concept that all we were doing was enforcing our

23   rights, all we were doing was enforcing our intellectual

24   property and policing.  And I would agree with them if that was

25   the context that this was sent, but he just said in the context

of the declaratory relief action -- and this is set forth in
their motion as well -- I believe it's in the motion, not the
reply -- that there is no threat of infringement.  So how can
they say on one end that there is no threat of infringement and
then on the other end state that this takedown notice was sent
for that purpose?

         The purpose of that takedown notice was to gain market
share, period, end of story.  They did not do their due
diligence before they sent that notice.  They did not get a
product -- this is in our allegations.  They did not buy a
product.  They did not do a comparison.  They did not make a
determination that there were differences, material differences
that would otherwise give them the right of cause of action
under the *Lanham Act*.  They just pulled the trigger.  And the
reason why they did that is because they want that secondary
market reduced.  So when they see a player on that market, on
that online marketplace, and they know that this is potentially
a entity that is not within their distribution chains, they
just send a notice; and that notice is not to enforce their
intellectual property rights because they would have done their
due diligence before doing that.  So that's our position with
commercial speech.

         And our allegations made clear that the purpose of the
notice was for them primarily to gain market share.  It was
economic.  And as the case law that we provided in our response

1       states, that that qualifies under the first factor.

2               With respect to the consumer influence, again, we've

3       cited the case law as to what consumer influences requires.

4       We've made the allegations.  They are cited, and they are

5       expressly set forth in our response what -- that consumers are

6       being influenced.  And I think this ties into the third factor,

7       as well, with the dissemination.

8               So this is not a question, and it is kind of an odd

9       bird here because when we're dealing with these online

10      marketplaces, we are dealing with a pretty nascent industry in

11      terms of the Walmarts and the eBays and the Amazons and how

12      consumers are now shopping and making that direct contact.

13      Walmart is the gatekeeper, just like Amazon, just like eBay.

14      We have no other way of communicating with the consumer.  We

15      have to rely on Walmart.

16              Walmart, in turn, increases our ranking, again, all

17      set forth in the allegations.  Based on those rankings, we get

18      high reviews; we get better consumer traffic.  It takes years

19      for consumer -- for the seller to develop a high-ranking place.

20      By submitting these takedown notices without sufficient basis,

21      you are absolutely ruining that relationship with the online

22      marketplace platform, and that could be notice to one person --

23      Walmart in this case -- which the case law says, if in this

24      particular industry, one is enough, that's enough, if you

25      analyze it subjectively.

1          And that's what we're not only asking the Court to do,

2    in terms of analyze that notice as being disseminated to the

3    one player that is going to cause all the effect, but also look

4    at the effect.  The effect is tremendous.  The effect is

5    Walmart taking the listing down automatically, and that's --

6    there is nothing we can do.  This is not -- Counsel mentioned

7    the paragraph that identified the DMCA.  This is not DMCA.

8    This is not a copyright action; it's a trademark action.  We

9    mentioned it because in the event that there was a copyright

10   aspect to this, as we sit here today, it's not.

11          So there is no protocol built in in a trademark

12   context that allows us, like in copyrights, to submit a

13   response and to have that rebutted and to have a potential

14   dispute resolved through a process.  You submit that takedown

15   notice for a trademark, that's it.  You are done.  You cannot

16   sell anymore.  And that is what they were using as a tool, and

17   that's where we -- we -- I'll remind the Court, we referenced

18   this vitamin -- I think that's the name of it.

19          In any event, that case from the District of Colorado

20   was dealing with a similar situation where the defendant was

21   manipulating online rankings by submitting customer reviews,

22   and the District Court found that that manipulation was enough

23   to qualify as an act under the *Lanham Act*.  And it also -- that

24   case is interesting as well because it talks about what the

25   effect of what they did was, and the effect is that lower

```
 1   visibility.  That effect is that lower consumer ranking that
 2   ultimately causes anyone who visits that page to view that
 3   person as being an untrusted seller.  And that is precisely
 4   what the Lanham Act is designed to deter.
 5           And then lastly, Your Honor, with the dec relief
 6   claim, again, you can't have it both ways.  I -- I mean, it
 7   either was submitted to -- to enforce intellectual property
 8   rights or it was submitted for, as we have alleged.  If they
 9   want to take the position that it wasn't submitted, fine, but
10   you can't just say no, no, we didn't do that and forego the
11   allegations or circumvent the allegations that that was the
12   primary purpose of you submitting this takedown notice and thus
13   allowing us to fall under the scope of the Federal Declaratory
14   Judgment Act.
15           Your Honor, I want to clarify one thing with the
16   Court.  Let me grab the case, if I may.  And I apologize this
17   was not submitted in our response, but may I pass you a copy
18   of -- may I approach?
19           THE COURT:  Yes, please.  Thank you.
20           MR. GUERRA:  So briefly, that case is Maher Law
21   Firm v. Newlin.  That's out of the Middle District of Florida,
22   2019 WL 3858157.  And in that case a Lanham Act claim was not
23   alleged.  It was a dec action, but the dec action was based on
24   the possibility that the defendant would, in turn, file a
25   counterclaim against the plaintiff under the Lanham Act, and
```

1    the Court found -- noted there is no independent jurisdiction,

2    rightly, under the dec action -- the dec relief statute, but if

3    the countersuit is based on a federal cause of action, then

4    there is proper subject matter jurisdiction.

5         The reason why I state this is, if the Court is

6    inclined to agree with the Plaintiff on the *Lanham Act* claim, I

7    still believe that we do have -- this Court still has subject

8    matter jurisdiction because the allegations of the complaint

9    made clear that if they were to counterclaim, it would most

10   likely fall within the scope of the *Lanham Act*.

11        THE COURT:  If I was inclined to agree with the

12   Defendants.

13        MR. GUERRA:  Correct.  On their position on the *Lanham*

14   *Act*.

15        THE COURT:  Right.

16        MR. GUERRA:  For example, if you decide we did not

17   properly plead a *Lanham Act* claim, and the Court does not want

18   to exercise supplemental jurisdiction over the remaining state

19   court claims, this case makes clear that the dec action that

20   was asserted would still provide the Court with proper

21   jurisdiction over the entire action, whatever's remaining.

22        THE COURT:  Correct.

23        MR. GUERRA:  And that was my last point, Your Honor.

24        THE COURT:  Thank you very much.

25        Mr. Sanchelima.

1        MR. SANCHELIMA:  Yes, I would like to clarify

2  something, Your Honor.  And Plaintiff repeats at least 20 times

3  in its moving papers that the Defendants filed a takedown

4  notice.  Defendants have no power to take down anything from

5  Walmart's portal.  It is -- the takedown notice was generated

6  by Walmart, not by Defendants.  Defendants, all they did was

7  submit an IP form that is prescribed under that transitory

8  screen at that time.  So it is a mischaracterization on the

9  part of the Defendants.

10        The second thing that I would like to call your -- the

11  Court's attention is that there -- nowhere in the complaint,

12  amended complaint there is allegation that Defendants

13  manipulated the portal or in any -- or submitted any reviews

14  like in the case cited by Counsel in connection with the

15  vitamins case, I believe.  There is no such allegation in the

16  amended complaint, and that's because they cannot make that

17  allegation.  There is not one review anywhere in connection

18  with this matter.

19        And lastly, the case law does not provide any guidance

20  as to what the effect will be.  That's just an opinion.  That's

21  not an actionable fact that could be interpreted to lead to a

22  plausible cause of action for the Plaintiff.  At most, is a

23  convoluted opinion that they may have that because they are no

24  longer -- or their product is no longer in the Walmart portal,

25  maybe they are counterfeiters.  Well, it could be that they run

```
 1   out of inventory; it could be that it's no longer profitable.
 2   But the consumer is not going to say two plus two equals four
 3   and say, okay, they are no longer -- they are counterfeiters.
 4   That doesn't make any sense that this opinion of the Plaintiff
 5   would be transformed somehow into an actionable fact.
 6              THE COURT:  Mr. Guerra, anything additional?
 7              MR. GUERRA:  Just in brief a rebuttal to
 8   Mr. Sanchelima's points.  The IP form, I think that's not a
 9   pressing distinction for purposes primarily of 12(b)(6).  What
10   we have alleged is that they submitted a takedown notice, them
11   responding by saying we didn't submit a takedown notice is
12   called a denial of the allegation so that I don't -- I don't
13   see that as being persuasive.
14              THE COURT:  To be clear, your Exhibit A is not the
15   takedown notice, is it?  That's -- that's notification from
16   Walmart.  It's not the actual communication from the Defendants
17   to Walmart, right?
18              MR. GUERRA:  That's correct.  So the way that the
19   process works is once the -- once the Defendant submits the
20   form and Walmart initiates the takedown of the listing.
21              THE COURT:  Right.
22              MR. GUERRA:  I mean, that's why we are referring it to
23   as the takedown notice.  You are essentially notifying the
24   platform, look, this is -- this -- and it gives you categories,
25   and the category they have to check the box on this is a
```

1    counterfeit or infringing product, and the online platform

2    proceeds to remove the listing and then notify the seller.  So

3    what you are seeing here is the notification from the Walmart

4    marketplace to the seller.

5           THE COURT:  So your Paragraph 28, which alleges on

6    information and believe the IP claim form of infringement that

7    the Defendant submitted to Walmart contains representations

8    under penalty of perjury.  That form that the Defendant

9    submitted to Walmart is not attached to the pleading, correct?

10          MR. GUERRA:  It is not.

11          THE COURT:  Because you don't have it yet.

12          MR. GUERRA:  I do not.

13          THE COURT:  Right.  But nevertheless that form, based

14   upon Exhibit A, would contain assertions that your product is

15   an infringing product.

16          MR. GUERRA:  Correct.  Walmart would never go out of

17   its way to generate a notice like this to the seller if it had

18   not received one of these IP forms suggesting counterfeit or

19   infringing conduct.

20          THE COURT:  All right.  Thank you.

21          Mr. Sanchelima?

22          MR. SANCHELIMA:  The only thing I would like to add,

23   Your Honor, is that the notice sent by Walmart provides an

24   avenue for Plaintiffs to resubmit a product that would be

25   legitimate and that they would be able to sell through the

```
 1    normal channels of distribution.
 2            MR. GUERRA:  May I, Your Honor?  Yeah -- well, that
 3    goes to the heart of this, the product that they submitted the
 4    takedown notice for was legitimate product.  We wouldn't be
 5    here having this dispute if we didn't believe it was.
 6        (Pause in proceedings.)
 7            THE COURT:  Well, let me sort of begin in reverse
 8    order.  If I determine I have -- that the Plaintiff has stated
 9    claims for relief over which I have subject matter
10    jurisdiction, then, of course, I would have supplementary
11    jurisdiction over the state causes of action in the amended
12    complaint.
13            Next, with regard to the Count 1 declaratory judgment
14    of noninfringement, as I see it, that is really just the claim
15    for relief.  The relief the Plaintiff seeks is a declaratory
16    judgment; whereas, in Count 2, the relief the Plaintiff seeks
17    is monetary damages.
18            Is that right, Mr. Guerra?
19            MR. GUERRA:  That --
20            THE COURT:  I mean, you want a declaration in Count 1.
21            MR. GUERRA:  Well, correct.  The request for
22    declaratory relief under the *Declaratory Judgment Act* that they
23    submit a notice to the public stating that the -- there was an
24    infringement.  We wanted a declaration from the Court stating
25    that the product that was -- that was the subject of the
```

1    accused listing is not infringing and is not counterfeit.

2              THE COURT:  Right.

3              MR. GUERRA:  And then --

4              THE COURT:  But what you are asking for in Count 1 is

5    an affirmation should you prevail in Count 2, right?  If you

6    prevail on Count 2, what follows is that declare -- is that

7    declaration.

8              MR. GUERRA:  In a way, yes, Your Honor.  It's

9    essentially the equitable relief.

10             THE COURT:  Right.

11             MR. GUERRA:  That you would seek under the *Lanham Act,*

12   and just as you articulated, the *Lanham Act* claim is seeking

13   damages for the --

14             THE COURT:  Right.

15             MR. GUERRA:  -- unlawful.

16             THE COURT:  It's really one claim.  It's one cause of

17   action under the *Lanham Act*.  And in Count 1, that's the relief

18   you seek, and in Count 2, you are seeking money damages.  At

19   the end of the day, do you state a claim for relief under the

20   *Lanham Act*?  And I believe you do.

21             I understand the arguments you've made,

22   Mr. Sanchelima, but I do believe that the Plaintiff satisfies

23   the necessarily elements, as I went over with you with my

24   earlier remarks, and makes a sufficient showing that the

25   statements that are alleged to have been made by your clients

1    qualify as commercial speech.

2          It's alleged that your clients are in competition with

3    the Plaintiff and the -- it's also alleged that the statements

4    were made for the purposes of influencing decisions and were

5    sufficiently disseminated, given the manner in which these

6    matters are handled by the recipient of these statements,

7    Walmart, and the effect that they had on the Plaintiff.  So I

8    do find that the amended complaint survives the motion to

9    dismiss.

10          And how much time do you need to respond?

11          MR. SANCHELIMA:  Will 20 days be reasonable?

12          THE COURT:  Very good.  20 days then.

13          MR. SANCHELIMA:  Thank you, Your Honor.

14          THE COURT:  Okay.  Thank you very much.

15          MR. GUERRA:  Thank you, Your Honor.

16          THE COURT:  And you have a good afternoon.

17       (The proceedings adjourned at 4:42 p.m.)

18

19

20

21

22

23

24

25

1        **C E R T I F I C A T E**

2

3         I hereby certify that the foregoing is an

4    accurate transcription of the proceedings in the

5    above-entitled matter.

6

7    _12/27/19__
          DATE              STEPHANIE A. McCARN, RPR
8                           Official United States Court Reporter
                            400 North Miami Avenue, Twelfth Floor
9                           Miami, Florida 33128
                            (305) 523-5518
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25